THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEEP SEA FISHERMEN'S UNION OF THE PACIFIC,<br><br>                Plaintiff,<br>    v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE, *et al.*,<br><br>                Defendants. | CASE NO. C21-0452-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's motion to compel (Dkt. No. 18) and Defendants' motion for summary judgment (Dkt. No. 19). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for summary judgment and DENIES the motion to compel for the reasons explained below.

## I.    BACKGROUND

Defendant National Marine Fisheries Services is an office within Defendant National Oceanic and Atmospheric Administration ("NOAA"), which in turn is part of Defendant Department of Commerce (together "Defendants"). (Dkt. No. 4 at 2.) NOAA administers the North Pacific Observer Program (the "Observer Program") which, as Defendants explain:

//

> [O]versees independent but certified observers that help NOAA monitor and regulate fishing activity. Observers collect data from U.S. commercial fishing vessels and shoreside facilities to monitor quantities [of fish] caught and discarded. In some instances, commercial fishing vessels deliver their catch to a "tender," a separate vessel that then delivers the catch dockside, thereby allowing the fishing vessel to remain at sea longer. There are concerns that delivering to tenders might allow fishing vessels to avoid dockside reporting duties.

(Dkt. No. 19 at 2–3 (citations omitted); *see also* Dkt. No. 21-4 at 4 (more background on the Observer Program).) Presumably, the concern is that doing this could allow commercial fishing operations to understate their fish catching and, consequently, how much their activities implicate NOAA's conservation and fishery management goals.

In spring or summer 2018,[1] Plaintiff sent NOAA a Freedom of Information Act ("FOIA") request seeking 10 categories of documents related to the Observer Program. (Dkt. Nos. 4 at 3, 9–11; 21 at 2.) The parties apparently negotiated the scope of these requests, which Plaintiff agreed to narrow and clarify. (Dkt. Nos. 21 at 2–3; 21-2 at 2–3.) Of note, Plaintiff limited certain of its requests to the January 2017–July 2018 timeframe and to source data for the Observer Program's 2016 and 2017 annual reports. (Dkt. No. 21-2 at 2–3; *see also* Dkt. No. 27 at 2–4 (not disputing this characterization).)

NOAA describes its search for responsive documents as follows:

> NOAA FOIA liaisons conducted searches for responsive documents, totaling approximately seven hours of search time, by searching the Observer Statements Database, PC hard drives, shared document systems, and agency emails of personnel for NOAA Fisheries' Office of Law Enforcement, the Sustainable Fisheries Division of the Alaska Region, and the Fisheries Monitoring and Analysis Division of the Alaska Fisheries Science Center. The search was conducted by two staff members from the Office of Law Enforcement, two staff

---

[1] The record is inconsistent on the nature and timing of Plaintiff's underlying FOIA request: Plaintiff's Amended Complaint cites as a "complete copy of this FOIA request" a May 23, 2018 confirmation e-mail and a July 19, 2018 letter from NOAA stating that it received a FOIA request from Plaintiff on June 13, 2018. (Dkt. No. 4 at 3, 9–11.) But Defendants say that a May 15, 2018 letter from Plaintiff's lawyer is the underlying FOIA request. (Dkt. Nos. 21 at 2, 21-1 at 2–3.) The substance of the FOIA request is the same in each instance, so the discrepancy is not material—just confusing.

ORDER
C21-0452-JCC
PAGE - 2

members from the Alaska Region, and one staff member from the Alaska Fisheries Science Center.

(Dkt. No. 21 at 3.) Defendants do not state when they conducted these searches, and they give no other details about their document search and collection process. (*See generally id.*) Plaintiff asserts inaccurately that Defendants did not begin producing documents until May 2020, two years after the initial FOIA request. (Dkt. No. 27 at 6.) But Defendants' evidence establishes that they began producing responsive records in October 2018. (Dkt. No. 21 at 3.)

Then, "[o]n or shortly after October of 2019, as part of a routine technology refresh, the agency cell phones of employees working in the Alaska Division of NMFS'[s] Office of Law Enforcement were replaced, and the turned-in devices had their memory deleted." (Dkt. No. 23 at 2.) Thus, while Defendant apparently did not search any of those devices to begin with (*see* Dkt. No. 21 at 3), it is impossible to do so now (Dkt. No. 23 at 2).[2]

All told, Defendants produced the following documents on the following dates:

| Date | Documents produced | Partially redacted | Fully redacted |
|---|---|---|---|
| October 23, 2018 | 179 | | |
| April 3, 2020 | 85 | | |
| May 29, 2020 | 143 | 74 | 11 |
| September 22, 2020 | 57 | 19 | 13 |
| May 10, 2021 | 2 (inadvertently omitted from prior productions) | 2 | |

(Dkt. No. 21 at 3, 4.)

After receiving the final production set, Plaintiff's counsel reminded Defendants that the original FOIA request of course "would encompass all text messages and other forms of instant messaging, but it appears that none have been received," and asked whether the agency intended

---

[2] It is unclear whether the data still exists somewhere even if it is no longer on the cell phones themselves. (*See* Dkt. No. 23 at 2 ("[C]ell phones in use during the relevant time period no longer contain any text messages from that period that may be searched *directly on those devices*." (emphasis added)).)

ORDER
C21-0452-JCC
PAGE - 3

to produce any text messages. (Dkt. No. 21-3 at 4.) Plaintiff also requested a comprehensive redaction log sufficient to let it evaluate the claimed grounds for withholding. (*Id.*) Defendants responded that any responsive text messages would have been captured by Defendants' email account searches, because an agency policy effective since September 20, 2017, requires employees to forward to their work emails any agency records they create on their personal devices. (*See id.* at 2–3, 10–13.)

Plaintiff filed an administrative appeal challenging the adequacy of Defendants' withholding log and of their document search. (*See* Dkt. No. 21-4 at 2.) The agency conceded that it had agreed, but failed, to provide a privilege log, so it furnished one, but it otherwise denied relief. (*Id.* at 13.) Plaintiff this action in April 2021. (*See* Dkt. No. 1.)

## II. DISCUSSION

### A. Motion to Compel

Plaintiff has not satisfied the prerequisites for compelling a deposition. It has not formally noticed or subpoenaed Glenn Merrill's deposition, *see* Fed. R. Civ. P. 30(a)(1), (b)(1), even though Plaintiff has long known that Defendants oppose any discovery. (*See* Dkt. No. 14 at 3–4 (parties' discovery plan in their August 2021 joint status report).) Nor has Plaintiff performed its meet-and-confer duties to bring a contested discovery motion. *See* Fed. R. Civ. P. 37(a)(1); LCR 37(a)(1). In fact, all discussions about deposing Mr. Merrill apparently happened over email. (*See* Dkt. Nos. 18-1 at 2, 18-2 at 2–3.) Therefore, the motion to compel is DENIED.

### B. Summary Judgment

#### 1. Legal Standard

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views facts in the light most favorable to the nonmovant and resolves ambiguity in that party's favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The moving party has the initial burden to show lack of a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323

(1986). If it succeeds, the burden shifts to the nonmoving party to demonstrate there is an issue for trial. *See id.* at 323–24.

Within this framework, there are two central questions for resolving a FOIA case at the summary judgment stage: Was the Government's search "reasonably calculated to uncover all responsive documents"? *Zemansky v. U.S. Envtl. Prot. Agency*, 767 F.2d 569, 571 (9th Cir. 1985) (quoting *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984)). And, did information that the Government withheld fall within a FOIA exemption? *See* 5 U.S.C. §§ 552(b)(1)–(9). In assessing the adequacy of the agency's document collection efforts and whether its withholding is proper, courts typically rely on declarations from the agency that justify its search methods and its asserted bases for withholding documents under a statutory exemption. *See, e.g.*, *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995).

    2.    Analysis

        a.    Withheld Documents

A withholding log must contain sufficient information for the reader to fairly evaluate the asserted basis for withholding a particular document. *See Sea Shepherd Legal v. NOAA*, 516 F. Supp. 3d 1217, 1228–29 (W.D. Wash. 2021) (citing *Citizens Comm'n*, 45 F.3d at 1328). Defendants' withholding logs do this,[3] (*see generally* Dkt. No. 21-5 (describing in detail the withheld documents and the job descriptions or roles of those involved in the communications or in the underlying events)), especially considered alongside the explanation of Mark Graff in his

---

[3] Although some courts have required naming authors, recipients, etc., as Plaintiff urges, (Dkt. No. 27 at 5–6), there is "no set formula" for a withholding log, *see Hornbeck Offshore Transp., LLC v. U.S. Coastguard*, 2006 WL 696053, slip op. at 14 (D.D.C. 2006). And, with no indication that withheld documents were anything but "internal" to the NOAA, (*see* Dkt. No. 31 at 5), it is sufficient to describe authors, senders, and recipients generally, without naming them, *see Shapiro v. U.S. Soc. Sec. Admin.*, 2021 WL 8316784, slip op. at 3–4 (D. Vt. 2021) (rejecting the argument that knowing specific senders and recipients was "critical to determin[e]" claims of privilege and work product, because the description "email string between OGC attorneys" was sufficient to assess the withholding log without *in camera* review (alteration original)).

supporting declarations, (Dkt. Nos. 21 at 4–10; 31 at 2–6). Accordingly, the Court GRANTS summary judgment as to the sufficiency of Defendants' redactions and withholding log.

### b.   Adequacy of Search

In assessing the adequacy of an agency's search, the Court may rely on reasonably detailed declarations describing "the search terms and type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Mobley v. CIA*, 806 F.3d 568, 580–581 (D.C. Cir. 2015). If the declarations are sufficiently detailed and are not conclusory, the Court affords them a presumption of good faith that cannot be rebutted by purely speculative claims that more documents may exist elsewhere. *Id.*

Defendants establish that, as of September 20, 2017, NOAA had a written policy[4] that, if followed, would have resulted in Defendants' email searches capturing any responsive text messages from personal devices. (*See* Dkt. Nos. 19 at 5; 21-3 at 2, 10–13; 23 at 1.) Courts presume that agency employees follow such policies absent evidence to the contrary, and such evidence must be more than mere speculation. *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 241 F. Supp. 3d 14, 21–22 (D.D.C. 2017). Although Defendants' evidence of adherence to this policy is not particularly strong,[5] the only evidence that anyone deviated from it—*i.e.*, someone saw Mr. Merrill using his personal phone at a meeting, (Dkt. No. 18-3 at 2)—is wholly speculative. Plaintiff thus fails to rebut the presumption that NOAA employees complied with the policy. Accordingly, the Court GRANTS summary judgment that Defendants adequately searched personal cell phones for records dated September 20, 2017, or later.

---

[4] Although government-wide requirements around personal devices apparently existed before September 2017, there is a factual issue as to whether NOAA was officially following those requirements before then, whether or not federal law required it to do so. (*See* Dkt. Nos. 19 at 5; 23 at 1 (suggesting that, before September 2017, NOAA had no "written policy . . . providing guidance on implementing the 2014 amendments to the Federal Records Act").)

[5] *Compare* (Dkt. No. 22 at 3 ("To the best of my knowledge, I have complied with this policy throughout all time periods relevant to this request.")), *with Competitive Enter. Inst.*, 241 F. Supp. 3d at 22 (evidence showed compliance with email-forwarding policy approximately 4,500 times)

But summary judgment is otherwise DENIED as to the adequacy of Defendants' search. Plaintiff's FOIA request expressly relates to pre-September 2017 documents. (*See* Dkt. No. 21-2 at 2–3 (Plaintiff clarified that it was "interested in [sic] specifically in issues pertaining to catch-only trawl fisheries . . . from Jan. 1, 2017 through July 13, 2018" and in documents related to passages in the 2016 and 2017 Observer Program annual reports).) Before that date, there was no device-usage policy for the Court to presume that the agency followed.

Nor does Defendants' one-paragraph description of their search process explain why they searched the places they did, whether those places were the ones most likely to contain responsive records, or even when the searches happened. (*See* Dkt. No. 21 at 3, ¶ 8.) This is not enough. *Compare Mobley*, 806 F.3d at 581–82 (describing sufficient declarations), *with Murray v. Fed. Bur. of Prisons*, 741 F. Supp. 2d 156, 163 (D.D.C. 2010) (declaration did "not establish that the systems of records actually searched were those most likely to contain [responsive] records"), *and Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (vacating summary judgment where declarations failed to "[a]t the very least," explain that no locations other than those searched were likely to contain responsive documents).

Defendants also admit that they erased the memories of agency cell phones (as opposed to personal ones) in October 2019, more than a year *after* Plaintiff's FOIA request, while document collection and production was apparently ongoing. (*See* Dkt. Nos. 21 at 3; 23 at 2.) While an agency cannot be faulted for destroying records pursuant to its normal retention policy, once it receives a FOIA request implicating the records, it has a duty to preserve them. *See*; *Pinson v. Dep't of Justice*, 236 F. Supp. 3d 338, 356 (D.D.C. 2017) (citing *Flowers v. IRS*, 307 F. Supp. 2d 60, 72 (D.D.C. 2004) (noting that, had the plaintiff filed a valid FOIA request before "the federal document-retention machinery lumbered forward on schedule," she might now have in hand the desired records)); *Wadelton v. Dep't of State*, 106 F. Supp. 3d 139, 147 (D.D.C. 2015) (holding that timing of destruction was dispositive).

It may well be that Defendants' search was comprehensive and reasonable. But absent

ORDER
C21-0452-JCC
PAGE - 7

some evidence that agency cell phones would *not* have contained responsive records and that the only places that would have were likely the ones Defendants searched, they cannot carry their initial burden to show absence of a genuine dispute about the adequacy of the search.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's motion to compel (Dkt. No. 18) is DENIED, and Defendant's motion for summary judgment (Dkt. No. 19) is GRANTED in part and DENIED in part. Specifically, the Court GRANTS summary judgment as to the sufficiency of Defendants' redactions and withholding log, and the adequacy of their search for post-September 2017 text messages on personal devices. Summary judgment is otherwise DENIED.

DATED this 9th day of June 2022.

John C. Coughenour
UNITED STATES DISTRICT JUDGE